# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TAMMIE SOLOMON,[1] )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-13-496-FHS-SPS |

## REPORT AND RECOMMENDATION

The claimant Tammie Solomon requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot,

---

[1] The undersigned Magistrate Judge notes the Plaintiff's name is improperly spelled in the Complaint, and the heading refers to the correct spelling of her name.

considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born April 10, 1971, and was forty-one years old at the time of the administrative hearing (Tr. 28, 103). She completed the eleventh grade, and has worked as an assembly line worker, fast food worker, and housekeeper (Tr. 17, 143). The claimant alleges that she has been unable to work since March 6, 2011, due to depression, asthma, fibromyalgia, shoulder and neck pain, and back pain (Tr. 142).

## Procedural History

June 8, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ James Bentley held an administrative hearing and determined the claimant was not disabled in a written opinion dated May 14, 2013 (Tr. 10-19). The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the ability to perform light work as defined in 20 C.F.R. § 404.1567(b), except that the work must be unskilled and not involve overhead reaching with the right upper extremity. Additionally, he determined that she must avoid concentrated exposure to fumes, dusts, gases, and poor ventilation, and must be able to alternate sitting and standing, defined as a temporary change in position without leaving

3

the work station (Tr. 14). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *e. g.*, arcade attendant, parking lot attendant, and furniture rental clerk (Tr. 18).

## Review

The claimant contends that the ALJ erred by: (i) improperly evaluating her credibility, (ii) failing to properly assess her RFC, (iii) failing to properly weigh a Medical Source Statement from her treating physician, and (iv) failing to fully develop the record.[3] The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ found that the claimant had the severe impairments of rotator cuff injury of her right shoulder, asthma, fibromyalgia, depression, and obesity, as well as the nonsevere impairments of hepatitis B and type II diabetes mellitus (Tr. 12). The relevant medical evidence reveals that the claimant began complaining of pain to her right shoulder in January 2011 (Tr. 223). An x-ray performed at the same time was unremarkable (Tr. 227). On April 19, 2011, a cervical spine MRI revealed broad base disk bulges with bilateral foraminal narrowing at C6-7, and right sided disk protrusion at C4-5, and she was given a surgical referral (Tr. 269-270). The claimant was referred to Dr. John Pulliam, who assessed the claimant with fibromyalgia and began medication

---

[3] Under Local Civ. R. 7.1(c), "[b]riefs exceeding fifteen (15) pages in length shall be accompanied by an indexed table of contents showing headings and subheadings and an indexed table of statutes, rules, ordinances, cases, and other authorities cited." The claimant's brief fails to comply with this rule, but the undersigned Magistrate Judge nevertheless elects to address the merits of the claimant's contentions.

4

management (Tr. 293). An MRI of the right shoulder then revealed a complete rotator cuff tear, second partial tear, and other labral problems (Tr. 303).

The claimant's treating physician, Dr. Tony Brown, treated the claimant for all her impairments, including her right shoulder pain (Tr. 319-335, 371-410). By May 2012, he noted that her shoulder pain was "stable," but that she continued to guard against examination (Tr. 392, 395). A September 19, 2012 x-ray of the right shoulder did not demonstrate significant degenerative changes (Tr. 407).

On June 20, 2011, Patrick Walton, PA-C, completed a physical medical source statement (MSS) of the claimant's ability to perform work. He indicated, *inter alia*, that the claimant could not use the right hand for reaching, handling/grasping, pushing/pulling, or fine manipulation, and that she could not crawl or reach above the head. He indicated she could not tolerate exposure to unprotected heights, being around moving machinery, or driving automatic equipment, but could tolerate continuous exposure to marked temperature changes; exposure to dust, fumes, and gases; and exposure to noise (Tr. 308). He checked boxes indicating that she would need unscheduled breaks during the day, would need to lie down at unpredictable times, and that she would be absent from work about four days per month, but would not need a sit/stand/walk option at will (Tr. 309).

At a November 7, 2011 consultative exam, Dr. Jimmie Taylor noted that the claimant had 5/5 grip strength bilaterally, and full range of motion of the back (Tr. 311). He assessed the claimant with fibromyalgia by history, injured right rotator cuff injury by history, obesity, asthma by history, chronic pain, history of carpal tunnel syndrome, joint

pain in all joints, and degenerative joint disease by history (Tr. 312). He indicated she had 18/18 trigger points for fibromyalgia and stated, "Hurts anywhere touched" (Tr. 313). She was positive for pain in her lumbosacral and cervical spine, tender everywhere, and had some mild reduced range of motion for the back and hips, but full range of motion of both shoulders (Tr. 315-317).

In December 2011, a state reviewing physician found that the claimant could perform light work with limited reaching that restricted her overhead right reaching due to the rotator cuff injury (Tr. 362-367).

On September 28, 2012, Dr. Brown completed a physical MSS, leaving blank the section related to the use of hands (including reaching), but indicating in the following section that she was unable to crawl and reach above the head, and could only occasionally climb (Tr. 411). He provided the indications of what the claimant could tolerate as Mr. Walton had, including that she could tolerate exposure to dust, fumes, and gases (Tr. 411). Dr. Brown also stated that the claimant would miss about four days of work per month, would not need to elevate her feet, and would not need a sit/stand/walk option at will if employed (Tr. 412).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as much of the medical evidence in the record, including Dr. Walton's treatment, her referral to Dr. Pulliam, and Dr. Brown's treatment records (Tr. 14-15). The ALJ then gave Mr. Walton's assessment little weight, finding the Dr. Brown's more recent assessment reflected the claimant's more current situation. He then gave Dr. Brown's MSS some weight, with regard to the claimant's limitations on reaching, attention, and

6

concentration, but found his statement that she could be continuously exposed to temperature extremes and environmental irritants be given little weight as inconsistent with the claimant's own testimony (and her severe impairment of asthma) (Tr. 17). Finally, the ALJ found that the limitations regarding unscheduled breaks and lying down unexpectedly were given little weight because they were not reflected in the treatment notes (Tr. 17). He then found the claimant not credible and concluded there was work she could perform (Tr. 17-19).

The claimant first contends that the ALJ erred in analyzing her credibility. A credibility determination is entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

In this case, the ALJ set out the applicable credibility factors and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible, including: (i) there was little objective documentation regarding specific limitations arising from her shoulder problem, (ii) the record does not reflect a total inability to function as a result of this impairment, (iii) she never visited an emergency

7

room for pain, (iv) she has made no attempts for alternative financing for a surgical procedure, and (v) she did not report shoulder pain at each visit with her treating physician nor highlight it at a recent emergency room visit (Tr. 17). The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*. The claimant argues that it is not clear what "alternative financing" she should have acquired, then cited to places in the record she *did* complain of right shoulder pain. The undersigned Magistrate Judge agrees that the claimant did repeatedly complain of pain in her right shoulder, but finds the ALJ accounted for this when he stated in the same paragraph that "[i]t is clear that the claimant has a debilitating shoulder problem; on physical examinations she was unable to even be tested for range of motion" (Tr. 27). Nevertheless, there is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, or that he failed to state his reasoning, and his determination of the claimant's credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

Second, the claimant asserts that the ALJ erred in his RFC assessment because the evidence in the record would support a more restrictive RFC and reversal is required in cases where the ALJ "fails to identify the specific medical exhibits which were rejected and the reasons for their rejection." *See* Docket No. 22, pp. 14-15. The claimant has not, however, pointed to any specific finding by the ALJ or evidence in the record as the basis for this alleged error, except with regard to the claimant's treating physician, Dr. Brown. The undersigned Magistrate Judge therefore finds that the ALJ did not commit any error in his analysis. An ALJ is required to assign controlling weight to the medical opinions

8

of treating physicians only if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). And even if medical opinions are not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300 *and* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4 (July 2, 1996). The pertinent factors include: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5.

The ALJ's treatment of Dr. Brown's opinion, summarized above, meets these standards. The ALJ's opinion was thus sufficiently clear for the Court to determine the weight he gave to Dr. Trent's opinion, as well as sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."), *citing* 20 C.F.R. § 404.1527(d)(2). The claimant nevertheless argues that the ALJ erred by failing to assign his opinion more weight than that of non-treating sources, and states that the ALJ failed to address relevant evidence establishing that the claimant is in fact disabled. However, the claimant does not specify what this evidence is, and the ALJ noted the evidence in the record and further indicated the facts he was required to consider and stated that he had considered them. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). The ALJ is not required to discuss each factor and his reasoned basis for not affording Dr. Brown's opinion controlling weight, standing alone, is not reversible error. *See Oldham*, 509 F.3d at 1258 (2007) ("That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review. . . . The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing

10

more was required[.]") [internal citations omitted]. *See also Andersen v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [emphasis in original] [internal citation omitted]. The undersigned Magistrate Judge finds that the ALJ noted the various findings of the claimant's treating, consultative, and reviewing physicians, *adopted* limitations suggested in the medical record, *and still concluded* that she could perform light work. When all the evidence is taken into account, the conclusion that the claimant could perform light work is thus supported by substantial evidence.

The claimant further contends that the ALJ should have recontacted Dr. Brown for clarification. Although the ALJ may not engage in unsubstantiated speculation to reject a treating physician opinion, *see, e. g., McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."), *quoting Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000), that is not the case here. If the ALJ had doubts as to any of the evidence, he *could have* re-contacted Dr. Miller to clear it up, *see* 20 C.F.R. § 404.1520b(c) ("[I]f after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency . . . We may recontact your treating physician,

psychologist, or other medical source."), but he was under no obligation to do so, as the claimant implies.

Finally, the claimant contends that the ALJ failed to develop the record, but makes this assertion without reference to any part of the record. It is true that a social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-61 (10th Cir. 1993), *citing Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, "it is not the ALJ's duty to be the claimant's advocate[,]" but "the duty is one of inquiry and factual development. The claimant continues to bear the ultimate burden of proving that she is disabled under the regulations." *Id.* at 361 [citations omitted].

The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine her RFC differently from the Commissioner, which the Court simply cannot do. *See Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is

therefore legally correct.  The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner.  Any objections to this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2016.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**